16-2369

_____

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
_____

THOUGHT, INC.,

Plaintiff-Appellant

v.

ORACLE CORPORATION,

Defendant-Appellee

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA IN C12-5601,
JUDGE WILLIAM H. ORRICK
_____

CORRECTED BRIEF OF PLAINTIFF-APPELLANT THOUGHT, INC.
– NON-CONFIDENTIAL –

STEVE W. BERMAN
MARK S. CARLSON
NICHOLAS S. BOEBEL
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
(206) 268-9346
markc@hbsslaw.com

KELLY G. HYNDMAN
CHANDRAN B. IYER
SUGHRUE MION PLLC
2100 Pennsylvania Avenue, N.W.
Washington, DC 20037
(202) 663-7407
khyndman@sughrue.com

Attorneys for Plaintiff-Appellant

October 4, 2016

# UNITED STATES DISTRICT COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

Thought, Inc. v. Oracle Corporation
Case No. 16-2369

## CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant Thought, Inc. certifies the following:

1.    The full name of the party represented by us is:

   Thought, Inc.

2.    The name of the real parties in interest (if the parties named in the caption are not the real parties in interest) represented by us is:

   There are no real parties in interest not named in the caption.

3.    Parent corporations and publicly held companies that own 10 percent or more of the stock of the parties represented by us are:

   None.

4.    The names of all law firms and the partners or associates that are expected to appear in this court for the party represented by us are:

   Steve W. Berman, Mark S. Carlson, Nicholas S. Boebel of Hagens Berman Sobol Shapiro LLP; and Kelly G. Hyndman and Chandran B. Iyer of Sughrue Mion PLLC

/s/ *Mark S. Carlson*
Mark S. Carlson
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
(206) 268-9346
(206) 623-0594
markc@hbsslaw.com

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................i

TABLE OF CONTENTS ..................................................................... ii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES..........................................................1

STATEMENT OF THE CASE................................................................3

    A.    Object-Oriented Applications. ...............................................3

    B.    Relational Databases. ...........................................................5

    C.    The "Object-Relational Impedance Mismatch." ....................5

    D.    The '197 Patent. ...................................................................7

    E.    Procedural history...............................................................11

    F.    The Summary Judgment Order on Review........................12

SUMMARY OF THE ARGUMENT ....................................................15

ARGUMENT .....................................................................................18

I.    Statement of the Standard of Review. ..........................................18

    A.    This Court reviews the District Court's grant of summary judgment *de novo* and without deference.............................18

    B.    On summary judgment, the District Court is required to credit Thought's evidence and draw all justifiable inferences in Thought's favor. ...................................................................20

II.    The District Court erred when it failed to credit Thought's evidence that structural elements of the accused "*first adapter*" meet the "*unpacking*" and "*instantiating*" limitations of the claims. ..........................23

A.   The District Court erred when it failed to credit Thought's evidence identifying the structural elements of the accused "*first adapter*.".................................................................................25

  1.   Thought's evidence identified multiple structural elements that together comprise the accused "*first adapter*." ...................................................................25

  2.   The District Court failed to credit Thought's evidence and adopted *Oracle's* characterization of the accused "*first adapter*." .........................................................39

B.   The District Court failed to credit Thought's evidence that structural elements identified as the accused first adapter met the "*unpacking the data to effect instantiating the object attributes and the object name into a new object*" limitation. ...........40

  1.   The District Court failed to credit Thought's evidence that elements of the accused first adapter met the "*unpacking the data*" limitation.................................................41

  2.   The District Court failed to credit Thought's evidence that elements of the accused first adapter met the unpacking "*to effect instantiating the object attributes and the object name into a new object*" limitation. ..................42

III.   The District Court erred when it failed to credit Thought's evidence that structural elements of the accused systems meet the "*packing of the object attributes and the object name as data*" limitation......................46

A.   The District Court erred when it narrowed its previous construction of "*packing*" in its summary judgment order. ................46

B.   The District Court failed to credit Thought's evidence that structural elements of the accused systems meet the "*packing*" limitation under its initial correct construction. ...................50

IV.   The District Court erred when it failed to credit Thought's evidence that structural elements of the accused systems meet the "*extracting the object attributes and the object name from the object*" limitation. .........53

A.    The District Court erred when it construed "*extracting*" narrowly..............................................................................53

B.    The District Court failed to credit Thought's evidence that the structural elements of the accused systems met the "*extracting the object attributes and object name from the object*" limitation under the proper construction. ............................................58

V.    The District Court erred when it ruled that the Oracle products packaged and sold with TopLink or EclipseLink and that use them to persist data do not infringe the asserted claims of the '197 Patent. ..............62

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............................63

CERTIFICATE OF SERVICE ..............................................................65

CERTIFICATE OF COMPLIANCE  WITH TYPE-VOLUME LIMITATION, TYPEFACE  REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ..........................................................66

ADDENDUM

**CONFIDENTIAL MATERIAL OMITTED**

The material omitted on pages 30-38, 41-43, 50-51, and 59-61 contains quotes or paraphrases of proprietary source code for the accused systems, which Oracle has designated "HIGHLY CONFIDENTIAL-SOURCE CODE" pursuant to the Protective Order in this case, reproduced at Appx0042-64.

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Armco, Inc. v. Cyclops Corp.*,
　791 F.2d 147 (Fed. Cir. 1986) .........................................................16, 18, 21, 22

*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986).........................................................................................21

*Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*,
　424 F.3d 1293 (Fed. Cir. 2005) ......................................................16, 22, 44, 61

*Enfish, LLC v. Microsoft Corp.*,
　822 F.3d 1327 (Fed. Cir. 2016) ......................................................16, 18, 20, 21

*Federal Deposit Ins. Corp. v. New Hampshire Ins. Co.*,
　953 F.2d 478 (9th Cir. 1991) ....................................................................21, 26

*Gasser Chair Co. v. Infanti Chair Mfg. Corp.*,
　60 F.3d 770 (Fed. Cir. 1995) ..............................................................................20

*Gemmy Indus. Corp. v. Chrisha Creations Ltd.*,
　452 F.3d 1353 (Fed. Cir. 2006) ........................................................................21

*Genentech, Inc. v. Chiron Corp.*,
　112 F.3d 495 (Fed. Cir. 1997) ..........................................................................55

*Getz v. Boeing Co.*,
　654 F.3d 852 (9th Cir. 2011) ............................................................................26

*Grober v. Mako Products, Inc.*,
　686 F.3d 1335 (Fed. Cir. 2012) ........................................................................18

*Lemelson v. TRW, Inc.*,
　760 F.2d 1254 (Fed. Cir. 1985) ......................................................18, 20, 21, 22

*Liquid Dynamics Corp. v. Vaughan Co.*,
　355 F.3d 1361 (Fed. Cir. 2004) ........................................................................22

*Metro. Life Ins. Co. v. Bancorp Servs., LLC*,
　527 F.3d 1330 (Fed. Cir. 2008) ..........................................................22

*Microsoft Corp. v. Proxyconn, Inc.*,
　789 F.3d 1292 (Fed. Cir. 2015) ..........................................................20

*Mintz v. Dietz & Watson, Inc.*,
　679 F.3d 1372 (Fed. Cir. 2012) ..........................................................22

*Monsanto Co. v. Bayer BioScience N.V.*,
　363 F.3d 1235 (Fed. Cir. 2004) ..........................................................22

*Optivus Tech., Inc. v. Ion Beam Applications S.A.*,
　469 F.3d 978 (Fed. Cir. 2006) ......................................................44, 45

*Pfaff v. Wells Elecs., Inc.*,
　5 F.3d 514 (Fed. Cir. 1993) ................................................................18

*Phillips v. AWH Corp.*,
　415 F.3d 1303 (Fed. Cir. 2005) (*en banc*)..................................17, 48

*Scharf v. United States Attorney General*,
　597 F.2d 1240 (9th Cir. 1979) ............................................................26

*Shire Dev., LLC v. Watson Pharm., Inc.*,
　787 F.3d 1359 (Fed. Cir. 2015) ..........................................................19

*Teva Pharm. USA, Inc. v. Sandoz*,
　789 F.3d 1335 (Fed. Cir. 2015) ..........................................................19

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
　135 S. Ct. 831. (2015)..........................................................................19

*Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*,
　351 F.3d 1139 (Fed. Cir. 2003) ..........................................................22

*Vitronics Corp. v. Conceptronic, Inc.*,
　90 F.3d 1576 (Fed. Cir. 1996) ......................................................17, 48

## STATUTES

28 U.S.C. § 1295(a)(1)............................................................................1

28 U.S.C. § 1331 ...............................................................................................1

28 U.S.C. § 1338(a) ..........................................................................................1

35 U.S.C. § 271 ................................................................................................1

### OTHER AUTHORITIES

Fed. R. App. P. 4(a)(1)(A) ...............................................................................1

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a), because Plaintiff-Appellant Thought asserts claims for patent infringement under 35 U.S.C. § 271.  The Honorable William H. Orrick, United States District Judge, granted summary judgment of non-infringement and entered final judgment on June 13, 2016.

Thought's notice of appeal was timely filed under Fed. R. App. P. 4(a)(1)(A) on July 13, 2016.  This Court of Appeals has appellate jurisdiction under 28 U.S.C. § 1295(a)(1) because this civil action arises under federal patent law.  This appeal is from a final judgment.

## STATEMENT OF THE ISSUES

The District Court granted summary judgment of non-infringement when it ruled that four of the claim limitations of US Patent No. 5,857,197 ('197 Patent) were not met by the accused Oracle systems.  The '197 Patent recites a computer-implemented middleware invention that has a "*first adapter*."  The claimed first adapter has programming that implements recited operations.  The four recited operations that are material to this appeal are (1) "*extracting the object attributes and the object name from the object to effect packing the object attributes and object name as data*;" and (2) "*unpacking the data to effect instantiating the object attributes and the object name into a new object*."  The District Court ruled that

Thought did not present evidence that the _first adapter_ had elements that met the "_unpacking_" and "_instantiating_" limitations, and did not present evidence that the accused systems had elements that met the "_extracting_" and "_packing_" limitations. But in reaching this conclusion, the District Court failed to credit Thought's evidence demonstrating that these limitations were met. And the District Court adopted new narrow constructions of "_packing_" and "_extracting_," but did so without considering the intrinsic and extrinsic evidence which do not narrow these limitations. Accordingly, the issues on appeal are as follows:

1.   Did the District Court err when it:

   (a)   Failed to credit Thought's evidence identifying the elements of the "_first adapter_;" and

   (b)   Failed to credit Thought's evidence that elements of the "_first adapter_" met the "_unpacking_" and "_instantiating_" limitations?

2.   Did the District Court err when it:

   (a)   Narrowed its previous construction of "_packing_" without support in the intrinsic or extrinsic evidence; and

   (b)   Failed to credit Thought's evidence that elements of the accused systems met the "_packing_" limitation properly construed?

3   Did the District Court err when it:

(a)    Construed "*extracting*" narrowly without support in the intrinsic record or extrinsic evidence; and

(b)    Failed to credit Thought's evidence that elements of the accused systems met the "*extracting*" limitation properly construed?

## STATEMENT OF THE CASE

The '197 Patent solves a problem that arises when software applications written in an object-oriented programming language try to read or write data in relational databases.

## A.    Object-Oriented Applications.

Object-oriented programming conceives of a software application as a collection of interacting "objects" organized into "classes," where all objects of a given class have the same characteristics and behaviors. Appx0367 at ¶ 25. According to the 1996 *Oxford Dictionary of Computing*, objects "are derived from a template, and the collection of objects that are instances of a particular template are said to form a class." Appx0328, 346 at ¶ 62, n.26. A "class" is the template for an object: it defines the attributes—characteristics and behaviors—that will define the objects that may be members of the class. Appx0330 at ¶ 8. A specific member of a class (an "instance") is an "object." Appx0346 at ¶ 62.

For example, a software developer designing a court case management system might recognize cases, judges, clerks, attorneys, filings, orders, hearings, and parties as relevant objects.  A case object has characteristics such as a plaintiff, a defendant, filings, and an assigned judge.  And users of the system may wish to perform certain actions with case objects, such as open, close, or transfer them. *See,* Appx0361, 369-370 at ¶¶ 32-33.

The developer would then create classes to represent each category of objects.  For example, a developer would create a "Case" class.  The Case class might define member objects to all have attributes such as filing date, case number, filings, plaintiff, defendant, attorney(s), and assigned judge.  The Case class may also define the procedures ("methods") that can be performed on case objects to open, close, or transfer them.  Each Case object will have the same attributes (although the values, *e.g.*, the name of the plaintiff, may differ among objects of the class), and the same methods.  *See,* Appx0370 at ¶¶ 34-35.

When a computer executes object-oriented code, individual objects may be "instantiated" from a class.  "Instantiation" is the allocation of memory storage for the values for each object's attributes and a pointer to the class that defines the methods that can be performed on it.  But the allocated memory is volatile memory, which does not retain data when the computer is powered off. Consequently, objects do not automatically persist from one execution of the

application to the next.  For that to happen, the object must be "persisted" in either permanent memory (a hard drive) or in a database, the most common type of which is a relational database.  *See,* Appx0371 at ¶ 37.

## B.    Relational Databases.

A relational database organizes persisted data in "relations."  A relation is a table within a relational database containing data organized into rows and columns.  In a case management system, a Cases table would have columns for case number, date filed, case type, plaintiff, defendant, and judge.  And each row would store the values for a particular case.  A relational database often has multiple tables to avoid repetitive data entry, for example "parties," "judges," and "filings" may each be stored in other respective tables, and the Cases table would contain pointers to these other tables for the relevant value, such as assigned judge from the Judge's table.  *See,* Appx0375-77 at ¶¶ 56-60.

## C.    The "Object-Relational Impedance Mismatch."

To read persisted data in relational databases, object-oriented applications need to read values representing object attributes in relational tables.  But a table is not an object in an object-oriented programming sense, and an object is not a table.  Reading data from a relational table requires identifying the rows and columns of relevant data and placing that data into an object; and persisting data from an

object requires writing the data to the correct row and column of a relational table. *See,* Appx0379-80 at ¶¶ 68-69.

In the early 1990s, the difficulty of integrating objects with relational databases emerged as a major barrier to adopting object-oriented technology. Appx0380 at ¶ 70; Appx0713. At the time the invention of the '197 Patent was conceived, object-oriented programmers generally hand-coded an interface between objects and existing relational databases, which could account for 20-30% of the total programming effort. Appx0380 at ¶¶ 70-71; Appx0713. The resulting systems were tightly-coupled to the database, such that changes to the database might break the link between the object application and relational database. Appx0380 at ¶¶ 70-71.

Various software tools emerged in the mid-late 1990s to perform object-relational mapping (ORM), but these all suffered from the problem that changing the database required modifications to the embedded custom access code in the object application. Appx0330 at ¶¶ 10-11; Appx094 at 1:18-25, 1:45-56, 2:46-490. Modification and the unavoidable recompilation of such embedded custom access code to keep in sync with the database structure was an ongoing maintenance cost (Appx094 at 1: 54, 2:49-55), a bar to portability (*Id.* at 1:55, 2:53-55), and a factor driving more frequent distributions of software bug fixes (*Id.* at 1:55-56).

**D.    The '197 Patent.**

The '197 Patent provided a solution to the object-relational impedance mismatch that eliminated the need for embedded custom access code.  Appx0330 at ¶ 11.  In the mid-1990s, Ward Mullins, Thought's founder, conceived the '197 Patent's inventions and reduced them to practice in a suite of commercial embodiments called CocoBase.  Thought filed the application that matured into the '197 Patent on March 20, 1997, and the patent issued on January 5, 1999.  Appx094.  CocoBase soon became one of the two leading ORM tools at that time.  The other leading ORM tool was TopLink, which Oracle acquired in 2002, and then offered and sold TopLink alone or in combination with other Oracle products that used TopLink as a persistence provider.  And Oracle donated EclipseLink as an open-source version of TopLink that was the reference implementation of the Java Persistence API (JPA) 2.0.  JPA is the java specification for persisting data from object-oriented applications to relational databases.

At issue in this appeal are '197 Patent claims 1, 3, 5, 7 and 8.  Claims 1 and 3 are system claims, Claims 7 and 8 are method claims, and Claim 5 depends from either Claims 1 or 3.  Appx0111.  Claims 1 and 3, and 7 and 8, are identical except that claims 3 and 8 substitute "first adapter" for "first interface."  *Id.*  The method claims merely break down the limitations of the system claims into serial steps.  *Id.*  Claim 3 is exemplary, with the limitations relevant to this appeal emphasized:

**3.** A system for accessing at least one data store having a data store content and a data store schema as at least one object from at least one object application comprising:

at least one object schema including meta data corresponding to the data store schema;

a ***first adapter*** responsive to the object application including an application bridge receiving an object comprising object attributes and an object name from the object application, said first adapter ***extracting*** *the object attributes and the object name from the object to effect **packing** of the object attributes and the object name as data*, said first adapter ***unpacking*** *the data to effect **instantiating** the object attributes and the object name into a new object*; and

a second adapter in communication with said first adapter and in communication with at least one data store, said second adapter having a meta data map comprising at least one object name and providing the data store content from at least one data store corresponding to the object attributes and the meta data.

*Id*. Figure 1 of the '197 Patent provides a graphic illustration of one embodiment of the invention:



U.S. Patent                Jan. 5, 1999                5,857,197

FIG. 1

Appx093.

The invention includes a software layer referred to as the "adapter

abstraction layer" (600), which manages transactions between the object-oriented

application (101) and the database (302). Appx095 at 4:23-32. The abstraction

layer has a first adapter (400) and first interface (700), adapted for communication

between the application and the second adapter and interface. *Id.* at 4:52061. The

first adapter receives from the application a request (100) for an object stored in a

database. Appx0097 at 7:39-42.

The request includes an object (102) "*comprising*" object attributes (103) and an object name (104). Appx0111. The first adapter extracts the object attributes and object name from the request object (112) to effect packing them as data (105). Appx0097 at 7:39-46.

The adapter abstraction layer (600) has a second adapter (500) and second interface (700), adapted for communication with the first adapter and interface, and with the database. Appx0097 at 7:46-48. The second adapter and interface receive the data (105) from the first adapter, obtain the database content (304) corresponding to the object attributes and object name, and provide the retrieved data (115) to the first adapter (400). Appx0097 at 7:55-8:10.

The first adapter unpacks the data (115) to effect instantiating the retrieved object attributes (113) and object name (114) into a new object (112). Appx0097 at 8:11-18. The new object (112) is provided to the object application (101), in satisfaction of the original request. *Id.*

Because the adapter abstraction layer (600) has "a set of runtime adapters … which can be transparently interchanged" (Appx098 at 9:34-38), the object application (101) is free of embedded custom access code. This permits the use of "entirely new adapters which might interface with radically different data store(s) 302 without modification to the object application (101)." *Id.* at 9:34-47.

The two-adapter approach of the '197 Patent achieves two key goals: (1) "to dynamically build the code for accessing the data store at runtime, based on the object and its attributes, as opposed to embedding the access code within the object" (Appx094 at 2:46-49), and (2) "a generic object oriented mechanism to bridge various underlying data stores consistently, especially in a transparent, generic, centrally manageable, and secure way" (*Id.* at 2:59-63). The adapter abstraction layer claimed in the '197 Patent "abstracts" the transaction between the application and database such that the application's request to read or write database content is executed by the first and second interfaces and adapters, so that the application and database do not have to interact directly, thereby avoiding the need to place any embedded custom access code in the application.

## E.    Procedural history.

On October 31, 2012, Thought, Inc. sued Oracle, alleging infringement of the '197 Patent and six other patents.   Appx0009.  The accused systems were Oracle's TopLink and EclipseLink applications, and many other Oracle applications that incorporated or used TopLink or EclipseLink to store ("persist") data in databases.[1]  Oracle answered the complaint and asserted declaratory and other counterclaims on December 28, 2012.  Appx0010.

---

[1] Collectively, "accused systems."

The District Court originally construed nineteen claim terms on October 22, 2014 (Appx0112-0156), ten of which were identified as the most likely to be "case or claim dispositive" under local patent rules.  N.D. Cal. Pat. R. 4-1(a).  It later construed a twentieth term at Oracle's request on October 20, 2015.  Appx058-59.  In each instance, the District Court adopted all or substantially all of Thought's proffered constructions.  But the only construed term that was material for summary judgment was "packing," which the District Court's claim construction order defined as "placing data into a form suitable for communication between software components."  Appx0116-119.

The asserted claims of three patents were subsequently invalidated in an *inter partes* review.  Thought agreed to voluntarily dismiss infringement claims for the IPR patents and three of the remaining patents, in exchange for Oracle's dismissal of several affirmative defenses on August 3, 2015, leaving the '197 as the sole patent-in-suit.  Appx0160-615.  The parties completed fact discovery, expert disclosures, and expert discovery.

**F.     The Summary Judgment Order on Review.**

On February 25, 2016, Oracle moved for summary judgment of non-infringement of the '197 Patent.  Appx0033.  Oral argument was held on April 20 and 21, 2016.  Appx0037; 166-280; 281-326; 981-88.  On June 13, 2016, the

District Court granted summary judgment of non-infringement (Appx0066-091), and entered final judgment (Appx065).

Oracle's motion rested on the declaration of Anthony Hosking, Ph.D. Thought opposed the motion (Appx0758-790), supported by the declaration of Professor Hosagrahar Jagadish, Ph.D. (Appx0328-360), which incorporated by reference portions of Dr. Jagadish's infringement report that were attached as Exhibit 5 to the declaration of Thought's counsel (Appx0791-94; 0849-959). Dr. Jagadish presented Thought's claim construction technical tutorial, and submitted opinion evidence in opposition to summary judgment. His qualifications to proffer opinion testimony in this case have never been challenged.[2] At issue in summary judgment were (1) what elements comprised the "*first adapter*," (2) whether any of those elements met the "*unpacking*" and "*instantiating*" limitations, and (3) whether the accused systems had elements that met the "*packing*" and "*extracting*" limitations. Drs. Jagadish and Hosking presented conflicting views on each of

---

[2] Dr. Jagadish is the Bernard A. Galler Collegiate Professor of Electrical Engineering and Computer Science at the University of Michigan. Appx0328-29. He is a member of the database group and software systems laboratory at the University. *Id.* He teaches courses related to database management, the World Wide Web, and computer science fundamentals. *Id.* He has a Bachelor of Technology degree from The Indian Institute of Technology, Delhi, India, a Master of Science degree from Stanford University, and a Ph.D. from Stanford University, all in Electrical Engineering. *Id.*

these points in the parties' evidentiary submissions, thereby placing those material facts in dispute.

Thought asserted four infringement theories, but only one theory, called "Trace 1" by Thought and "Theory 1" by the District Court and Oracle, is relevant here.[3]  Theory 1 was supported by a software "trace" called Trace 1, which identified an infringing logic path traced through Oracle's source code, in other words, the classes and methods in the source code for the accused systems that are invoked and thereby meet the limitations of the claims.  The District Court granted Oracle's motion with respect to Theory 1, following two lines of reasoning. [4]

First, the District Court found that the claims allocate the "*extracting*," "*packing*," "*unpacking*," and "*instantiating*" limitations to the "*first adapter*," but defined the elements of the "*first adapter*" narrowly (attributing its narrow definition to Thought, but in fact adopting Oracle's definition).  Appx0080.  It then ruled that Thought had not submitted any evidence that any element of the "*first adapter*" as defined by Oracle and the District Court met the "*instantiating*" and "*unpacking*" limitations.  Appx0081-83.

_____

[3] The Court struck Thought's other three theories on the ground that they were not adequately disclosed in Thought's infringement contentions.  Appx0069-78. Thought has not appealed this ruling.

[4] Theory 1/Trace 1 is referred to herein as "Theory 1."

Second, the District Court narrowed its previous construction of "*packing*" (Appx0083-85), and adopted Oracle's newly-proposed narrow construction of "*extracting*." Appx0085-87. It then ruled that Thought had not submitted any evidence that any element of the accused systems met its new constructions of "*packing*" and "*extracting*." Appx0083-87.

Thought seeks review of the District Court's summary judgment of non-infringement (Appx066-91) and final judgment (Appx065).

## SUMMARY OF THE ARGUMENT

While the subject matter of the '197 Patent is somewhat technical and complex, the resolution of the issues in this appeal is relatively simple. The District Court failed to follow basic summary judgment and claim construction procedures. Thought submitted evidence in opposition to Oracle's summary judgment motion—more than sufficient to present genuine disputes of material fact—that each of the challenged limitations was met by elements of the accused systems. But in concluding that there was no infringement as a matter of law, the District Court disregarded the evidence of the non-moving party, Thought, and adopted Oracle's narrow constructions of two of the claim terms at issue that were not supported by the intrinsic and extrinsic evidence. Two familiar bedrock legal principles require reversal of the District Court's non-infringement ruling and claim constructions.

First, on summary judgment, "[t]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in [the non-movant's] favor." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). It is reversible error for a district court to fail to consider or credit the non-moving party's evidence when granting summary judgment. *See, e.g.*, *Armco, Inc. v. Cyclops Corp.*, 791 F.2d 147, 150-51 (Fed. Cir. 1986) (reversing summary judgment where district court failed to credit non-moving party's evidence). And it is reversible error also to ignore conflicting evidence on material facts in the parties' expert declarations. *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1313-14, 1316-17, 1318-19, 1322 (Fed. Cir. 2005)(reversing summary judgment where parties presented conflicting expert opinions).

But here, the District Court failed to credit the evidence submitted by Thought, the non-moving party. Thought submitted evidence specifically identifying the structural elements of the source code of the accused systems that it accused as the "*first adapter*," on a limitation-by-limitation basis. The District Court failed to credit this evidence, however, and adopted a truncated version of the accused "*first adapter*" proffered by Oracle in its reply brief. And Thought's evidence also specifically identified what, in the accused structure, meets the "*unpacking*," "*instantiating*," "*packing*" and "*extracting*" limitations. But having adopted Oracle's view of Thought's case, the District Court failed to credit this

evidence in granting summary judgment of non-infringement. These foundational errors were prejudicial because Thought's evidence presents multiple disputed material fact issues for a jury.

Second, when construing a patent claim, the court looks to the intrinsic record, including "the words of the claims themselves, the remainder of the specification, [and] the prosecution history." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*). The starting point in construing a claim term must be the words of the claim itself. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The claims "must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315. And courts are permitted to consider extrinsic evidence, such as expert testimony, dictionaries, and treatises. *Phillips*, 415 F.3d at 1317.

But here, the District Court narrowed its prior construction of the term "*packing*," and adopted a narrow construction of "*extracting*," without identifying any support in the claim language, the specification, or the extrinsic evidence. The District Court's erroneous constructions were prejudicial to Thought, because the District Court's rulings that Thought had not presented evidence that the accused systems had elements that met the newly-defined "*packing*" and "*extracting*" limitations were predicated on the narrow constructions.

Therefore, genuine disputes of material fact exist for the jury to decide on whether the accused systems have elements that meet the "*unpacking*," "*instantiating*," "*packing*," and "*extracting*" limitations of the '197 Patent's asserted claims. "[S]ummary judgment simply cannot be utilized as the tool for deciding those issues." *Armco*, 791 F.2d at 151. "At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Pfaff v. Wells Elecs., Inc.*, 5 F.3d 514, 519 (Fed. Cir. 1993), quoting *Anderson*, 477 U.S. at 249. Accordingly, "fact finding is an inappropriate exercise, at either the appellate or the district court level." *Lemelson*, 760 F.2d at 1260. This Court, therefore, should reverse the District Court, and hold that Thought presented sufficient evidence to defeat summary judgment.

## ARGUMENT

### I.    Statement of the Standard of Review.

#### A.    This Court reviews the District Court's grant of summary judgment *de novo* and without deference.

This Court reviews a grant of summary judgment under the standard of review of the regional circuit. *Enfish,* 822 F.3d at 1334. The Ninth Circuit reviews a grant of summary judgment *de novo* (*Id.*, citing *Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 859 (9th Cir. 2011)), without deference to the District Court (*Grober*

*v. Mako Products, Inc.*, 686 F.3d 1335, 1344 (Fed. Cir. 2012), citing *Burke v. County of Alameda*, 586 F.3d 725, 730 (9th Cir. 2009)).

This Court reviews the District Court's ultimate interpretation of patent claims *de novo*. *Teva Pharm. USA, Inc. v. Sandoz, Inc*., 135 S. Ct. 831, 841-42. (2015).  "[W]hen the district court reviews only evidence intrinsic to the patent (the patent claims and specifications, along with the patent's prosecution history), the judge's determination will amount solely to a determination of law, and [we] will review that construction de novo."  *Id*. at 841.

If a district court resolves factual disputes over evidence extrinsic to the patent, this Court will "review for clear error those factual findings that underlie a district court's claim construction." *Id*. at 842.  But it is not enough that the District Court may have *heard* extrinsic evidence; rather, the district court must have actually made a *factual finding* to trigger *Teva*'s deferential review.  *See, e.g.*, *Shire Dev., LLC v. Watson Pharm., Inc*., 787 F.3d 1359, 1364 (Fed. Cir. 2015) (*citing Teva*, 135 S. Ct. at 840-42); *Teva Pharm. USA, Inc. v. Sandoz*, 789 F.3d 1335, 1342 (Fed. Cir. 2015) ("Teva cannot transform legal analysis about the meaning or significance of the intrinsic evidence into a factual question simply by having an expert testify on it.").[5]

---

[5] And even then, this Court may nevertheless review the District Court's constructions *de novo* if the intrinsic record fully determines the proper scope of

Here, this Court reviews the District Court's claim constructions *de novo*.

The District Court did not make any factual findings based on extrinsic evidence to support its new constructions.

### B. On summary judgment, the District Court is required to credit Thought's evidence and draw all justifiable inferences in Thought's favor.

In reviewing a grant of summary judgment, this Court "must ensure that the district court 'view[ed] the evidence in a light most favorable to the nonmovant and dr[e]w all reasonable inferences in its favor, … and … resolve[d] all doubt over factual issues in favor of the party opposing summary judgment." *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed. Cir. 1995) (alterations in original), quoting *SRI Int'l. v. Matsushita Electric Corp.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985); *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1260 (Fed. Cir. 1985). In other words, this Court must "determine *de novo* that the strict standard to be applied by the district court has indeed been met." *Lemelson*, 760 F.2d at 1260 (citation omitted).

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

the disputed claim terms. *See, e.g.*, *Shire*, 787 F.3d at 1364 (*citing Teva*, 135 S. Ct. at 840-42); *Microsoft Corp. v. Proxyconn, Inc*., 789 F.3d 1292, 1297 (Fed. Cir. 2015) (reviewing claim construction de novo, and declining to consider "findings on [extrinsic] evidence because the intrinsic record [was] clear").

*Enfish,* 822 F.3d at 1334, quoting Fed. R. Civ. P. 56(a). "[T]he fundamental premise of a grant of summary judgment is that no reasonable jury could find other than in favor of the movant, when all reasonable factual inferences are drawn in favor of the non-movant." *Gemmy Indus. Corp. v. Chrisha Creations Ltd.*, 452 F.3d 1353, 1359 (Fed. Cir. 2006).

Thus, to avoid summary judgment, the non-moving party "is required merely to point to an evidentiary conflict created on the record, … and such issues of material fact should not be resolved conclusively in the opposing party's favor on the motion for summary judgment." *Armco*, 791 F.2d 147, 149 (Fed. Cir. 1986) (citations omitted). The nonmoving party need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Federal Deposit Ins. Corp. v. New Hampshire Ins. Co.*, 953 F.2d 478, 485 (9th Cir. 1991). "The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in [the non-movant's] favor." *Enfish*, 822 F.3d at 1334, citing *Anderson*, 477 U.S. 242, 255 (1986). "Further, as an additional precaution against denying a party its chance to prove a worthy case, any doubt as to the presence or absence of disputed issues of material fact must be resolved in favor of the presence of disputed issues, or in other words in favor of the party opposing summary judgment." *Lemelson*, 760

F.2d at 1261.  "[F]act-finding is an inappropriate exercise, at either the appellate or the district court level." *Lemelson*, 760 F.2d, at 1260.

It follows that a district court is not permitted to disregard the non-moving party's evidence submitted in opposition to summary judgment.  This Court has repeatedly held that it is reversible error for a district court to fail to credit the non-moving party's evidence when granting summary judgment.  *See, e.g.*, *Armco*, 791 F.2d at 150-51 (reversing summary judgment where district court failed to credit non-moving party's evidence); *Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1366, 1369 (Fed. Cir. 2004)(same); *Metro. Life Ins. Co. v. Bancorp Servs., LLC*, 527 F.3d 1330, 1338-39 (Fed. Cir. 2008)(same); *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1379 (Fed. Cir. 2012)(reversing summary judgment where district court "dismissed without consideration" evidence it should have analyzed); *Monsanto Co. v. Bayer BioScience N.V.*, 363 F.3d 1235, 1239-42 (Fed. Cir. 2004)(reversing summary judgment where district court discounted non-movant's affidavit); *Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*, 351 F.3d 1139, 1147-48 (Fed. Cir. 2003)(same).  And it is reversible error for the district court to grant summary judgment when the parties submit expert opinions that conflict, and if credited, would permit contrary inferences to be drawn in favor of the moving and non-moving party as to any material fact.  *Cross Med. Prods.*, 424 F.3d at 1313-14,

1316-17, 1318-19, 1322 (reversing summary judgment where parties presented conflicting expert opinions).

In sections II-IV, below, Thought presents the evidence that the District Court failed to credit. Section II presents Thought's evidence that the "*extracting ... to effect packing ... as data*" and "*unpacking ... to effect instantiating*" limitations of the asserted claims were met by the elements of the "*first adapter*," as defined by Dr. Jagadish. Section III presents Thought's evidence that the accused systems have elements that meet the "*packing*" limitation, and Section IV presents Thought's evidence that the accused systems have elements that meet the "*extracting*" limitation. Sections II-IV confirm that Thought submitted evidence that, if it had been credited by the District Court, would have presented disputed issues of material fact on the four limitations that the District Court relied upon in granting summary judgment.

## II.    The District Court erred when it failed to credit Thought's evidence that structural elements of the accused "*first adapter*" meet the "*unpacking*" and "*instantiating*" limitations of the claims.

Oracle's briefs mischaracterized Thought's infringement case, offering a truncated version as what *Oracle* contended Thought had accused as the structural elements of the "*first adapter*," apparently misleading the District Court and

causing it to fail to credit Thought's evidence.[6]  In its reply brief, Oracle

represented that Thought had accused only the *EntityManager*,

*EntityManagerImpl*, and *JpaEntityManager* classes as structural elements of the

"*first adapter*":

> The only components Thought specifically alleges to be
> the first adapter/interface are: (1) *EntityManager*, (2)
> *JpaEntityManager*, and (3) *EntityManagerImpl*. (See
> Opp. Br. at 6 (citing Jagadish Decl. at ¶ 78).)

Appx0966 at 7:10-12.  And the District Court simply adopted Oracle's truncated

definition of the elements of the accused "*first adapter*" in its order:

> Thought identifies the first interface/adapter as JPA's
> *EntityManager*, TopLink's *JpaEntityManager* and
> TopLink's *EntityManagerImpl*. Jagadish MSJ Decl. ¶ 78.

Appx0080 at n. 17.  It did so in disregard of Dr. Jagadish's inclusion of "other

functions in other packages" in identifying the structural elements of the "*first

adapter*," incorporating by reference his infringement report including Appx0858-

0959. This foundational error led the District Court to further errors in concluding

---

[6] Claims 1 and 7 recite a "*first interface*" where claims 3 and 8 recite a "*first
adapter*."  The difference between an interface and an adapter in the context of the
invention is not material here, and Dr. Jagadish relied on the same evidence for
both limitations.  Since Thought proffered claim 3 as exemplary, Thought will use
the term "*first adapter*" and the supporting evidence for claim 3 as meeting both
the "*first interface*" and "*first adapter*" limitations.  Dr. Jagadish made parallel
disclosures for the corresponding limitations of independent claims 1, 7 and 8,
which were also submitted in Exhibit 5.

that Thought had not offered any evidence that structural elements of the "*first*

*adapter*" met the "*unpacking*" and "*instantiating*" limitations.

**A.    The District Court erred when it failed to credit Thought's evidence identifying the structural elements of the accused "*first adapter*."**

**1.    Thought's evidence identified multiple structural elements that together comprise the accused "*first adapter*."**

The District Court's rulings that Thought had identified only JPA's

*EntityManager*, TopLink's *JpaEntityManager* and TopLink's *EntityManagerImpl*

as the "*first adapter*", and conclusion that Dr. Jagadish had failed to identify

elements in the "*first adapter*" that meet the "*unpacking*" and "*instantiating*"

limitations, were incorrect.  Thought identified more than just those three elements

as meeting the "*first adapter*" limitations.  Dr. Jagadish's summary judgment

declaration stated that he identified the "*first adapter*" structural elements in his

"infringement proofs," which were attached as Exhibits D1 through H2 to his

infringement expert report, and incorporated them by reference in his summary

judgment declaration:

> 77. In my detailed infringement proofs, I specifically identified the structure within the source code that implements the claimed first adapter and second adapter. Note 39: *See* Jagadish Infringement Report, Exhibits D1-H2.

> 78. The detailed infringement proofs identify *EntityManager*, *JPAEntityManager*, and

> *EntityManagerImpl* with the first adapter, <u>as well as</u>
> <u>other functions in other packages</u>. […]

Appx0350 (emphasis supplied).

Dr. Jagadish's infringement report exhibits, the "infringement proofs" referenced in paragraph 77 of his declaration (i.e., Exhibits D1-H1), fully identified those "other functions in other packages." Exhibit D1 is Thought's infringement case against Oracle's EclipseLink product. Exhibits E1, F1, G1, and H1 are the infringement cases against Oracle's TopLink version 12, TopLink version 11, TopLink Essentials, and TopLink version 10, respectively. The structural elements identified as the "*first adapter*" are substantially the same in each exhibit. Consequently, Dr. Jagadish's declaration opposing Oracle's summary judgment motion focused on Exhibit E1 (TopLink version 12) as representative. Thought's brief and Dr. Jagadish's declaration cited 62 of the 402 pages in Exhibit E1 that were relevant to the limitations that Oracle challenged, and these pages were attached to the declaration of Thought's counsel as Exhibit 5. Appx0858-959.[7]

---

[7] Oracle did not object to Thought's submission of the Jagadish infringement report attached as Exhibit 5 to Thought's counsel's declaration in opposition to summary judgment. Therefore, any objection to the admissibility of Exhibit 5 was waived. *Getz v. Boeing Co.,* 654 F.3d 852, 868 (9th Cir. 2011); *Federal Deposit Ins.*, 953 F.2d at 484-85; *Scharf v. United States Attorney General*, 597 F.2d 1240, 1243 (9th Cir. 1979)(noting that "courts generally are much more lenient with the affidavits of a party opposing summary judgment").

In its summary judgment opposition brief, Thought pointed the District Court to the evidence in Exhibit 5, Appx0858-959, that identified the structural elements of the "*first adapter*":

> Thought stated in its infringement proofs that the *value-FromRow* method is involved with unpacking in the first interface/adapter. So, too, Thought identifies numerous other structures in Oracle's software. These include not just *EntityManager*, but also *EntityManagerImpl* (… pp. 1590, 92, 93, 96, 97, 1601, 1685-88, 1690, 91, 95, 96, 1783, 92, 93, 96, 1801, 02, 83, 87, 88, 91, 92, 95)), *ObjectLevelReadQuery* (… pp. 1592, 99, 1602-04, 1791, 92, 99, 1887)), *ReadAllQuery* (… 1609, 1703, 1842, 1935)), and *DatabaseMapping* (… 1604, 1698, 1837, 1930)). For completeness, the aspects of the first interface/adapter identified with extracting include *ObjectLevelReadQuery* (including its *setExampleObject* method). … 1994-2006, 2103-15, 2224-30, 2335-41). Instantiating is identified with *ObjectBuilder* (including its *buildNewInstance* method). … 1603-10, 1697-1704, 1838-43, 1931-36).

Appx0770 at lines 12-25.

In the cited pages of Exhibit 5, Dr. Jagadish identified the structural elements of the accused systems that when invoked meet all of the limitations of the "*first adapter*" at a granular level—by java class and method names:

> *EntityManager* (Appx0350 at ¶ 78))
> *EntityManagerImpl* (Appx0350 at ¶ 78)
> *JpaEntityManager* (Appx0350 at ¶ 78))
> *AbstractRecord* (Appx0885, 886)
> *AbstractSession* (Appx0883, 884, 886)
> *buildAttributesIntoObject* (Appx0886, 889, 891, 892)
> *buildNewInstance* (Appx0889, 892)

*buildObject* (Appx0886, 877, 888)
*DatabaseMapping* (Appx0886)
*DatabaseQuery* (Appx0884)
*EntityManagerImpl* (Appx0874, 875, 876, 877, 878, 879, 883, 884)
*executeObjectLevelReadQuery* (Appx0875, 882, 885, 886)
*executeQuery* (Appx0875, 881, 883, 886)
*findInternal* (Appx0875, 876, 877, 878, 879, 883, 884)
*getDescriptor* (Appx0876, 878, 883)
*getReadObjectQuery* (Appx0884)
*ObjectBuilder* (Appx0886, 887, 889, 891, 892)
*ObjectLevelReadQuery* (Appx0875, 881, 882, 885, 886)
*readFromRowIntoObject* (Appx0886, 887)
*ReadObject-Query* (Appx0875, 877, 879, 880, 881, 882, 883, 884, 885, 886)
*setReferenceClass* (Appx0884)
*setSelectionId* (Appx0881, 884)
*setSelectionKey* (Appx0882)
*UnitOfWorkImpl* (Appx0884)
*valueFromRow* (Appx0887)

The District Court appears to have struggled with the concept that Dr. Jagadish identified multiple structural elements, *i.e.*, software packages, classes and methods, each of which performs only a part of the limitations attributed to the "*first adapter*," but that together fully meet the limitations of the "*first adapter*." The District Court appears implicitly to have expected all of the functions of the "*first adapter*" to be packaged in a single java class. This confusion was fostered by Oracle and Dr. Hosking, but was directly refuted by Dr. Jagadish.  Dr. Jagadish testified by declaration that it would not be material to a person of ordinary skill in the art that these structural elements are not packaged together in the same java class, because packaging software functions is a design choice:

75. However, code organization design choices of the accused TopLink systems have no bearing on whether the accused TopLink systems infringe the claims. The accused TopLink systems use two runtime interchangeable adapters or interfaces that perform the operations as discussed in my opening and rebuttal reports. Dr. Hosking appears to be asserting that these adapters must be restricted to a single object class or file within the TopLink code base. However, one of ordinary skill reading the claims of the '197 Patent in light of the specification would not understand the asserted claims to require the first adapter and second adapter be in single, separate classes.

[…]

77. In my detailed infringement proofs, I specifically identified the structure within the source code that implements the claimed first adapter and second adapter.

78. The detailed infringement proofs identify *EntityManager*, *JPAEntityManager*, and *EntityManagerImpl* with the first adapter, as well as other functions in other packages. […] Whether methods are in one package or another, however, is of no particular consequence. The factors I took into account, in analyzing Oracle's source code, included the determination of what the source code does, not how the source code was packaged.

Appx0349-350.

**a.    "*extracting … to effect packing … as data*"**

Contrary to the District Court's ruling, Dr. Jagadish specified the structural

elements of the accused "*first adapter*" that met the "*extracting … to effect*

*packing ... as data*" limitation.  He identified the structural elements of the accused

"*first adapter*" that met the "*extracting*" limitation:

> [source quoted code for *find* method excluded]

> The "object name" in the form of *Class<T>entityClass* is extracted from the object that is the set of parameters passed into the *find()* method and is used to determine the appropriate ███████ for the *find()* invocation by calling the ██████████ method. The "object name" is represented by the ████████ returned from the ███████████ method, as the class ██████████ includes the protected class █████ attribute at ██████████████████████████ in the parallel EclipseLink, thereby " extracting … the object name from the object."

Appx0876 (last paragraph).  He continued:

> The "object attributes" in the form of *ObjectPrimaryKey* are extracted from the object that is the set of parameters passed into the *find()* method, thereby "said first interface extracting the object attributes … from the object."



> Specifically, ██████████████████████████ ████████████████████████ ████████████████████ found at *Entity-ManagerImpl* ████ ORCL_THT_SC_00002638 calls to: ███████████████████████ ██████████████████ ████████████ ound at *EntityManagerImpl* ████ ORCL_-THT_SC_00002639.[8]

> [source code quoted for *findInternal* method excluded]

---

[8] References to Oracle source code are indicated by "ORCL_THT_SC."

CONFIDENTIAL MATERIAL HAS BEEN DELETED

Appx0877 (first two paragraphs).

And Dr. Jagadish also identified the structural elements of the accused "*first adapter*" that met the "*packing*" limitation:

> [quoted source code on pages 1689 and 1690 omitted]
>
> The extracted "object name" represented by the descriptor and the extracted "object attributes" represented by *primaryKey* are then packed.
>
> The primary key may be the entity primary key value, or primary key class, or a list of primary key values, which is extracted from the *primaryKey* object. When the *primaryKey* object is a composite primary key object, it contains at least two attributes. …
>
> The above-identified "operations that are an embodiment of extracting the object attributes and the object name from the object to effect packing" include:
>
> 
>
> The *find()* method calls the *find()* method at ███████ ███████████████ *EntityManagerImpl*███ at line ███
>
> The *find()* method calls the ███████████ method at ██ ████████████████ ██████████ at line ████
>
> The ██████████ method extracts the class ("object name") of the object using the ████ method, and returns ██████████████████████ (The term, "object name," as used in the asserted claims of the '197 Patent, means "name for an object, including but not limited to a class of the object.")
>
> After returning from ██████████ *find()* calls the *findInternal()* method at ████████████████ ██████████ *EntityManagerImp* ████ at line ███

CONFIDENTIAL MATERIAL HAS BEEN DELETED

Appx0878.

The *findInternal( )* method instantiates a ███████ of the class ██████ and extracts the ████████ ██ from the object by ███████████████████████████████████ ███████████████████████████.

Appx0879.

[source code for *findInternal* included in original exhibit omitted]

TopLink 12 packs the "object name" into the query object of the class *ReadObjectQuery* by instantiating the query object of class *ReadObjectQuery* for the ████████ ████████████████████ passed to the *find*() method and packs the "object attributes" into the query object of the class *ReadObjectQuery* by calling: ████████████ ███████████████████████ at *ReadObjectQuery*███████ ORCL_THT_SC_00002924.

[quoted source code for *setSelectionKey* in original exhibit excluded]

The query object of the class *ReadObjectQuery* that is the data into which the "object name" and the "object attributes" is packed is accessible to the object application through the *EntityManager* interface.

Appx0882.

[T]he query object of the class *ReadObjectQuery* that is the data into which the "object name" and the "object attributes" is packed is packed data that is placed "into a form suitable for communication between software components" and hence "said first adapter extracting the object attributes and the object name from the object to effect packing of the object attributes and the object name as data." This packed data is suitable for communication because it is accessible by, and therefore

CONFIDENTIAL MATERIAL HAS BEEN DELETED

suitable to, both the first adapter responsive to the object application, as discussed above, and the second adapter that is responsive to the database, as discussed below.

Appx0882-83.

Dr. Jagadish then detailed the classes and methods as they are invoked in the accused "*first adapter*" that met the "*extracting*" and "*packing*" limitations as follows:



The above-identified "operations that are an embodiment of extracting the object attributes and the object name from the object to effect packing" include:

The *find*()method calls the *find*() method at ▮▮▮▮▮▮▮▮▮▮ *EntityManagerImpl* ▮▮ at line ▮▮

The *find*() method calls the ▮▮▮▮▮ method at ▮▮▮▮▮▮▮▮▮▮ at line ▮▮

The ▮▮▮▮▮ method extracts the class ("object name") of the object using the ▮▮ method, and returns ▮▮▮▮▮▮▮ (The term, "object name," as used in the asserted claims of the '197 Patent, means "name for an object, including but not limited to a class of the object.")

After returning from ▮▮▮▮▮ *find*() calls the *findInternal*() method at ▮▮▮▮▮▮▮▮▮▮ *EntityManagerImpl* ▮▮ at line ▮▮

The *findInternal*() method instantiates a ▮▮▮▮ of the class ▮▮ and extracts the ▮▮▮▮ from the object by ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮

CONFIDENTIAL MATERIAL HAS BEEN DELETED

"to effect packing of the object attributes and the object name as data"

The *findInternal( )* method instantiates a query object of the class *ReadObjectQuery* to effect packing of the extracted object attributes and the object name as data

In one implementation, the *findInternal( )* method packs the extracted object name and the object attributes using the ██ *ReadObjectQuery( )* method

The ██ *ReadObjectQuery( )* method calls the ████████████ method, to effect packing of the object name, and calls the ██████████ method of *ReadObjectQuery* ████, to effect packing of the object attributes, and returns the packed query as packed data

The *findInternal( )* method then calls ████████ passing the query object ██████████████ ██████████████████ *EntityManagerImpl* ████ at line ██

The ████████ method instantiates ██████████ ████████████████, which will eventually be returned to the object application upon processing of the query

The ████████ method calls the ████████████ method, passing the query object as a parameter, at ██ ████████████████████████ at line ██

The ████████ method calls the ████████████ method, continuing to pass the query object as a parameter, at ████████████████████████ at line ██

The ████████ method calls the ████████████ method, continuing to pass the query object as a parameter, at ████████████████████████ at line ██

CONFIDENTIAL MATERIAL HAS BEEN DELETED

The ███████ method instantiates ███████ ███████████████ which will be used to unpack ██████████████████████

The ███████ method calls the *internalExecuteQuery()* method, continuing to pass the query object as a parameter, at ████████████████ ████████████████████ at line ███

The ██████████████ method calls the ████ method, continuing to pass the query object as a parameter, at ████████████████████ ████████████ at ███

The ██████ method instantiates ██████████████ query object from the query object

The ██████ method ██████████████████ ██████████████ by calling the ██████████████ method

The ██████ method calls the ██████████████ method ████████████████

The ██████████ method calls the ██████████████ method, on the ██████████████, at ████████████ ████████████████████████ at ███████

The ██████████████ method calls the ██████████████████ method at ████████ ████████████████ *ReadObjectQuery* ████ at ███

The ██████████████████ method instantiates ████████████ of the class █████ into which ██████ ██████████████████████

The ██████████████████ method instantiates ████████████ of the class ██████████████ into which ██████████████████████

CONFIDENTIAL MATERIAL HAS BEEN DELETED

The ████████████████ method calls the ████████████ method ██████████████ ██████ at ████████████████████ █████ at line ██ and return ████████████████ of the ███████ class, used as █████████████ ██████████████████████████ ████████

Appx0882-885.

In sum, the structural elements of the accused "*first adapter*" Dr. Jagadish identified that implement the "*extracting* … to effect *packing*" limitations are not limited to *EntityManager*, *EntityManagerImpl*, and *JpaEntityManager* (Appx0350 at ¶ 78), but also include: *AbstractSession* (Appx0883, 884, 886)*, DatabaseQuery* (Appx0884), *EntityManagerImpl* (Appx0874, 875, 876, 877, 978, 879, 883, 884)*, executeQuery* (Appx0875, 881, 883, 886)*, findInternal* (Appx0875, 876, 877, 878, 879, 883, 884)*, getDescriptor* (Appx0876, 878, 883)*, getReadObjectQuery* (Appx0884)*, ObjectLevelReadQuery* (Appx0875, 881, 882, 885, 886)*, Read-Object-Query* (Appx0875, 879, 880, 881, 882, 883, 884, 885, 886)*, setReference-Class* (Appx0884)*, setSelectionId* (Appx0881, 884)*, setSelectionKey* (Appx0882)*, and *UnitOfWorkImpl* (Appx0884).  Thought's evidence that these packages, classes and methods satisfy the "extracting" element of the first adapter is more than sufficient to create a disputed issue of material fact.

CONFIDENTIAL MATERIAL HAS BEEN DELETED

### b.    "*unpacking … to effect instantiating*"

Contrary to the District Court's holding, Thought also submitted substantial evidence that the accused systems have structural elements that meet the "*unpacking*" and "*instantiating*" limitations (Appx0885-892).  The most pertinent portions of Exhibit 5, Appx0885-892, are reproduced below with the source code quoted in the original exhibits omitted:



> In TopLink 12, the following method: ███████ ████████████████ found at *ReadObject-Query* ██ ORCL_THT_SC_00002920 calls to: ███ ██████████████████████ found at ██ ███████████████████ ORCL_THT_SC_-00002466,
>
> which calls to: ██████████████ █████████████████████████████ found at ██████████████████████ *ObjectBuilder* ██ ORCL_THT_SC_00002692 ██ ████████████████████████ ████████████████████ ████████ and
>
> which calls to: █████████████ ███████████████ ████████████████████ ██████████████████ found at █████ ███████████ *ObjectBuilder* ██ ORCL_THT_SC_00002696, used to build the object and
>
> which calls to: ██████████████████ ██████████████

CONFIDENTIAL MATERIAL HAS BEEN DELETED



[source code in original exhibit omitted]

Appx0886.

In TopLink 12, the packed data in the ▮▮▮▮ object is unpacked using the ▮▮▮▮▮ method into the ▮▮▮▮▮ of the class ▮▮▮ thereby "unpacking the data."

[source code in original exhibit omitted]

Appx0877.

In Toplink 12, a new object that is the ▮▮▮▮▮ of the class ▮▮▮ is instantiated using the ▮▮▮▮▮ method [shown in the omitted source code]. ▮▮▮▮▮ using the ▮▮▮▮▮ method [shown in the omitted source code], as discussed above regarding "unpacking," thereby "to effect instantiating the object attributes and the object name into a new object."

Appx0892.

-38-

Thus, the structural elements of the accused "*first adapter*" Dr. Jagadish identified for the "*unpacking* … to effect *instantiating*" limitations were: *Abstract-Record* (Appx0885-886)*, buildAttributesIntoObject* (Appx0886, 889, 891, 892)*, buildNewInstance* (Appx0889, 892)*, buildObject* (Appx0886, 887, 888)*, Database-Mapping* (Appx0886)*, executeObjectLevelReadQuery* (Appx0875, 882, 885, 886)*, ObjectBuilder* (Appx0886, 887, 889, 891, 892)*, readFromRowIntoObject* (Appx0886, 887)*,* and *valueFromRow* (Appx0887).

Oracle did not directly controvert Thought's evidence that the above structural elements were part of the "*first adapter*"; rather, it simply told the District Court that Thought's definition of the "*first adapter*" did not include them. And the District Court agreed with Oracle, contrary to Thought's evidence.  Here again, Thought's evidence is sufficient to present disputed issues of material fact as to whether the structural elements of the "*first* adapter" in the accused systems infringe the "*unpacking*" limitation.

### 2. The District Court failed to credit Thought's evidence and adopted *Oracle's* characterization of the accused "*first adapter*."

By failing to credit Dr. Jagadish's definition of the structural elements of the "*first adapter*" in his declaration and his incorporated infringement report, and by adopting Oracle's truncated version, the District Court excluded from consideration structural elements of the accused systems that meet the limitations

of the "*first adapter*" according to Dr. Jagadish in Theory 1: *AbstractRecord, AbstractSession, buildAttributesIntoObject, buildNewInstance, buildObject, DatabaseMapping, executeObjectLevelReadQuery, executeQuery, findInternal, getDescriptor, getReadObjectQuery, ObjectBuilder, ObjectLevelReadQuery, read-FromRowIntoObject, ReadObject-Query, setReferenceClass, setSelectionId, set-SelectionKey, UnitOfWorkImpl,* and *valueFromRow*.  This foundational error led the District Court to err in concluding that Thought had not presented any evidence that structural elements of the "*first adapter*" meet the "*unpacking*" and "*instantiating*" limitations.

**B.     The District Court failed to credit Thought's evidence that structural elements identified as the accused first adapter met the "*unpacking the data to effect instantiating the object attributes and the object name into a new object*" limitation.**

Exemplary Claim 3 recites that the "said *first adapter*" can perform "*unpacking* the data to effect *instantiating* the object attributes and the object name into a new object."  The District Court ruled that "Thought's expert does not identify the components [of the accused first adapter] that perform these [extract and effect instantiating] functions sufficient to rebut Oracle's assertion that TopLink does not have a first interface/adapter that performs the claimed functions."  Appx0082.  But, disregarding fundamental summary judgment law,

the District Court failed to credit Thought's evidence that these limitations were met in the accused systems.

**1.    The District Court failed to credit Thought's evidence that elements of the accused first adapter met the "*unpacking the data*" limitation.**

Thought's summary judgment opposition brief pointed the District Court to structural elements of the first adapter that meet the "unpacking" limitation, including *valueFromRow* method and the *ObjectLevelReadQuery*. Appx0770.  In Exhibit 5, the "detailed infringement proofs" of the infringement report that Dr. Jagadish incorporated in his declaration, Dr. Jagadish addressed the "*unpacking*" limitation in detail.  Appx0885.  He first identified the JPA elements that embody unpacking, including the *find()* method of the *EntityManager* interface.  *Id*.  He further identified the *valueFromRow* method as the element that unpacks:

> In TopLink 12, the packed data in the ██████████ object is unpacked using the ████████████ method into the ████████████ object of the class ██████ thereby "unpacking the data."

Appx0887 and Appx0985.  And in the preceding page and a half, Dr. Jagadish identified the structural elements—the classes and methods—that are invoked beginning with the *ObjectLevelReadQuery()* method to meet the "*unpacking*" limitation.  Appx0886-887.  And finally, he quoted the relevant portion of the source code for "*unpacking*" in the accused systems.  Appx0887.

CONFIDENTIAL MATERIAL HAS BEEN DELETED

But the District Court failed to credit this evidence.  It ruled that "Thought presents no evidence from its expert to show that *valueFromRow* is invoked by the components identified as the first interface/adapter to unpack."  Appx0083, lines 15-16 and n. 21.  Although the District Court acknowledged that Thought had identified *valueFromRow* as an element of the "*first adapter*" on pages 2004-05 of Dr. Jagadish's infringement proofs, it disregarded this evidence because those pages pertained to stricken infringement Theory 2.  Appx0083 at n. 21.  But the District Court ignored the fact that this same evidence appeared also at Appx0886-887, where Dr. Jagadish identified *valueFromRow* as a structural element of the "*first adapter*" that performs "*unpacking*" limitation for infringement *Theory 1*, at issue here and at summary judgment.

**2.    The District Court failed to credit Thought's evidence that elements of the accused first adapter met the unpacking "*to effect instantiating the object attributes and the object name into a new object*" limitation.**

Exhibit 5 specified the elements of the accused "*first adapter*" that "*effect instantiating*" the object name and attributes into a new object:



> In TopLink 12, the following method: ███████
> ████████████████████████████████████████
> ████████████████████████████████████
> ███████████████████████████ found at
> *EntityManagerImpl*███ ORCL_THT_SC_00002639
> instantiates a new query object of class *ReadObjectQuery*
> and packs the extracted object name and the object
> attributes into the query object of the class

CONFIDENTIAL MATERIAL HAS BEEN DELETED

>*ReadObjectQuery*. Thought's Response to Interrogatory
>No. 25, p. 1037.

Appx0875-876.

The District Court focused on one of the classes, *ObjectBuilder,* that

together with its method *buildNewInstance()* instantiate the new object, ruling that

"[t]here is no evidence from Jagadish that *ObjectBuilder* is part of or invoked by

the first interface/adapter …."  Appx0083.  But Thought's opposition brief pointed

the District Court to the classes and methods that comprise the structural elements

of the "*first adapter*" in Exhibit 5, including the *ObjectBuilder* class and its

*buildNewInstance()* meet the "*instantiating*" limitation:

>Instantiating is identified with *ObjectBuilder* (including
>its *buildNewInstance method*). Carlson Decl., Ex. 5
>(Jagadish Infringement Report at pp. 1603-10, 1697-
>1704, 1838-43, 1931-36).

(Appx0770 at 7:22-25]).

Moreover, Dr. Jagadish's infringement report specifically identifies both

*ObjectBuilder* and *buildNewInstance()* as well as other classes and methods that

meet the "*instantiating*" limitation:

>In TopLink 12, a new object that is the ███████████ of
>the class ██████ is instantiated using the
>████████████████ method. Attributes of the
>████████████ are set using the
>████████████████ method, as discussed above
>regarding "unpacking," thereby "to effect instantiating

CONFIDENTIAL MATERIAL HAS BEEN DELETED

> the object attributes and the object name into a new
> object."

Appx0892. The source code quoted at Appx0887-892 identifies the specific
structural elements of the "*first adapter*" that ultimately invoke *ObjectBuilder* and
its *buildNewInstance( )* method to "*instantiating*." The District Court simply failed
to credit this evidence.

Finally, the District Court noted Oracle's argument that *DatabaseAccessor* is
in fact the element that instantiates in the accused systems, citing Oracle's reply
brief and Dr. Hosking's declaration in support of Oracle's motion. Appx0082 at
17:5-13. But Dr. Hosking's testimony and Oracle's argument conflict squarely
with Dr. Jagadish's opinion that *ObjectBuilder* and *buildNewInstance( )* meet the
"*instantiating*" limitation, presenting conflicting expert testimony and a disputed
issue of material fact that should have barred summary judgment. *Cross Med.
Prods.*, 424 F.3d at 1313-14, 1316-17, 1318-19, 1322 (reversing summary
judgment where parties presented conflicting expert opinions).

The District Court relied also on *Optivus Tech., Inc. v. Ion Beam
Applications S.A.*, 469 F.3d 978, 990 (Fed. Cir. 2006) to support its ruling, but
*Optivus* only underscores the District Court's error. In *Optivus*, IonBeam moved
for summary judgment of invalidity, relying on a "Conceptual Design Report"
(CDR) as prior art. In Optivus's response, it "*did not dispute* that the CDR was

prior art; in fact, *its response made no reference to the CDR at all*." *Optivus*, 469 F.3d 978, 990 (Fed. Cir. 2006) (emphasis added). And "indeed, its response referred to and discussed the teachings of the CDR in the context of discussing *'prior art' and 'references*.'" *Id.* Further, Optivus conceded that "it *does not dispute* that the CDR was prior art." *Id.*

But here, Thought's opposition brief pointed the District Court to evidence of the structural elements of the "*first adapter*." Dr. Jagadish expressly disagreed with Oracle's expert's truncated list of elements comprising the "*first adapter*," and incorporated his infringement report where he identified all of the structural elements of the "*first adapter*," and quoted the applicable source code classes and methods. Appx0350 and n.39. And Thought submitted the referenced infringement report that identified the classes and methods invoked by the "*first adapter*" to meet the "*instantiating*" limitation, quoted and cited above. Thought did precisely what Optivus failed to do, but the District Court here failed to credit Thought's evidence that the accused systems have a "*first adapter*" that meets the "*instantiating*" limitation.

**III. The District Court erred when it failed to credit Thought's evidence that structural elements of the accused systems meet the "*packing of the object attributes and the object name as data*" limitation.**

**A. The District Court erred when it narrowed its previous construction of "*packing*" in its summary judgment order.**

In claim construction, the District Court correctly construed "*packing*" to mean: "placing data into a form suitable for communication between software components." Appx0116-119. The District Court rejected Oracle's attempt to import further narrowing of this construction: "[w]hile Oracle argues that 'packing' must do something to the data and that simply 'placing' the data as suggested by Thought is too ambiguous, Oracle's proposal to use 'translating' itself imports further ambiguities." Appx0117 at 6:1-5. The District Court correctly explained in its claim construction order:

> Moreover, data does not necessarily need to be "translated" for communication. It could, instead, be *compacted, reordered, or otherwise manipulated for various purposes*. As Dr. Jagadish notes, there are many purposes persons ordinarily skilled in the art would recognize as being served by packing data, including for storage in place, transport, orderliness or compaction. See, e.g., Jagadish Resp. Decl., ¶¶ 16, 18. Oracle does not demonstrate that "translation" of data is necessary to achieve the agreed-to purpose here – communication – much less any of the other functions packing serves that are also identified in the specification, such as *compression and data de-duplication*.

Appx0117 at 6:6-13 (emphasis supplied).

-46-

But at summary judgment, the District Court reversed course, and ruled that

Thought had "failed to raise an issue of material fact as to packing," because its

theory of "*packing*" did not "do something to the data":

> [Thought] does not address the claim language's
> requirement that "packing" requires some manipulation
> in the "form" of the data *to* facilitate communication.
> Jagadish does not explain how "setting" data in a "query
> structure" in the trip towards the database and then
> "setting" the data as a "result set" on the return trip
> manipulates the form of the data for purpose of
> communication, as opposed to simply arranging the
> identical data in two different ways.  The claim language
> requires something more than simply "arranging"
> existing data, it requires a *manipulation* of its form.

Appx0084 at 19:24-20:5 (emphasis in original).

Thus, before summary judgment, the District Court correctly ruled that

"*packing*" includes simply arranging the identical data in two different ways, for

example, when data is "manipulated" by being "compacted, reordered."

Appx0117 at 6:6-13.  Data that is compacted or reordered *is* identical data arranged

in two different ways.  But after summary judgment, the District Court narrowed

its construction of "*packing*" to exclude manipulation by "simply arranging the

identical data in two different ways," to further require that the packed data have a

"form" that is "manipulated."

When construing a patent claim, the court looks to the intrinsic record,

including "the words of the claims themselves, the remainder of the specification,

[and] the prosecution history." *Phillips*, 415 F.3d at 1314 (*en banc*).  The starting point in construing a claim term must be the words of the claim itself.  *See Vitronics*, 90 F.3d at 1582; *Phillips*, 415 F.3d at 1314 ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms.").  The claims "must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd* 517 U.S. 370 (1996)).  And courts are permitted to consider extrinsic evidence, such as expert testimony, dictionaries, and treatises.  *Phillips*, 415 F.3d at 1317 (citing *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)).

The District Court's narrowed construction is not supported by the intrinsic record or the extrinsic evidence.  The claims say nothing about "*packing*" as a "manipulation" of the "form" of data.  They recite only that the object attributes and name are extracted "to effect packing of the object attributes and the object name as data."  And there is no reference anywhere in the specification to packing as a "manipulation" of data, nor is there any reference to packing as a change to the "form" of the data.  The specification states that packing helps to "reduce network latency," and "increases the performance and scalability of the involved clients and servers."  Appx0098 at 10:5-12.  And packing helps to reduce "the quantity of extraneous information that is always returned to client object applications," and in

some embodiments serves the interests of "compression and data duplication reduction." *Id.* at 10:12-24. The specification supports "*packing*" as "simply arranging identical data in two different ways"—compression and de-duplication—and nowhere states that the "form" of the data must be further "manipulated." Indeed, the District Court's construction of "*packing*" would exclude the data de-duplication embodiment expressly disclosed in the specification. Appx0117 at 6:6-13.

Accordingly, the District Court erred when it ruled that the claims and specification define "*packing*" to mean a "manipulation" of the "form" of the data. The District Court originally defined "*packing*" as "placing data into a form that is suitable for communication between software components." When a system places data into a form suitable for communication, the data is packed within the context of the '197 Patent. This Court should reverse the District Court's narrow summary judgment revision of its construction of "*packing*" that requires "manipulation" of the "form" of the data, and hold that Thought presented evidence that structural elements of the accused systems meet the District Court's original correct "*packing*" construction.

**B.    The District Court failed to credit Thought's evidence that structural elements of the accused systems meet the "*packing*" limitation under its initial correct construction.**

Dr. Jagadish identified the structural elements of the first adapter that pack,

including the *EntityManager* interface element:

> The Court construed "packing" to mean "placing data into a form suitable for communication between software components." Dkt. 116.
>
> "Oracle TopLink and EclipseLink each implement functionalities that are an embodiment of packing the object attributes and the object name as data." Thought's Original Infringement Contentions, p. 57.
>
> "The *EntityManager* interface includes operations that process an instance of an entity class, which are an embodiment of packing the object attributes and the object name as data. Such operations include at least packing … the attribute values of an instance of an entity class so that the instance of the entity class can be persisted to a database." Thought's Original Infringement Contentions, p. 57.

Appx0879.  He further specified the structural elements of the *EntityManager*

interface, including *EntityManagerImpl* and *ReadObjectQuery,* that meet the

"*packing*" limitation:

> In TopLink 12, the following method: ███████████
> ████████████████████████
> ████████████████████ found at
> *EntityManagerImpl*███ ORCL_THT_SC_00002639
> instantiates a new query object of class *ReadObjectQuery*
> and packs the extracted object name and the object
> attributes into the query object of the class

CONFIDENTIAL MATERIAL HAS BEEN DELETED

> *ReadObjectQuery*. Thought's Response to Interrogatory No. 25, p. 1062.
>
> [two pages of quoted "packing" source code]
>
> The query object of the class *ReadObjectQuery* is the "data" into which the "object attributes" and the "object name" are packed. The query object of the class *ReadObjectQuery* is a "form suitable for communication between software components." Dkt. 116.

Appx0879-881.

And importantly, he explained why the packed data of the accused first

adapter meets the District Court's original correct construction of "*packing*," as

"placing data into a form suitable for communication between software

components":

> For example, ███████████ are accessed through the *EntityManage* ███████████████ API, and executed through the ██████ interface (*e.g.*, ██████████████████ or ██████████████ hereby the query object of the class *ReadObjectQuery* that is the data into which the "object name" and the "object attributes" is packed is packed data that is placed "into a form suitable for communication between software components" and hence "said first adapter extracting the object attributes and the object name from the object to effect packing of the object attributes and the object name as data." *This packed data is suitable for communication because it is accessible by, and therefore suitable to, both the first adapter responsive to the object application, as discussed above, and the second adapter that is responsive to the database, as discussed below.*

Appx0882-883 (emphasis supplied).

CONFIDENTIAL MATERIAL HAS BEEN DELETED

Again, the District Court failed to credit Thought's evidence.  Rather, it ruled that Thought had not shown that the accused "*packing*" elements of the first adapter "manipulate the form of the data," and contrary to the evidence, that Jagadish had *not* explained how the "*packing*" elements facilitate communication:

> Thought fails to raise an issue of material fact as to packing. It does not address the claim language's requirement that "packing" requires some manipulation in the 'form' of the data to facilitate communication. Jagadish does not explain how 'setting' data in a 'query structure' in the trip towards the database and then 'setting' the data as a 'result set' on the return trip manipulates the form of the data for purpose of communication, as opposed to simply arranging the identical data in two different ways.

Appx0084 at 19:24-20:4.

But neither the claims nor the specification say anything about "manipulating the form of the data," so Thought was not required to present evidence that the first adapter did so.  Nor could Thought have anticipated the need to offer proof that the first adapter "manipulated the form of the data," because the District Court adopted this unsupported narrowing of its prior claim construction in the summary judgment order, *after* briefing and oral argument were complete. And Dr. Jagadish *did* explain in Exhibit 5 how "*packing*" as he found it in the accused systems makes the data suitable for communication:  the packed data "is suitable for communication because it is accessible by, and therefore suitable to,

both the first adapter responsive to the object application, […], and the second adapter that is responsive to the database […]." Appx0882-883 (emphasis supplied). But the District Court simply failed to credit this evidence.

Finally, even if the District Court's new construction had been correct, it was error for the District Court to decide on summary judgment that Thought's evidence of "*packing*"—using *findInternal* to instantiate a new *ReadObjectQuery*, followed by placing the extracted object name and attributes into the query object (Appx0881)—did not meet the limitation. It was for the jury to decide whether the object name and object attributes were manipulated in form when they were extracted from the request object (which the accused second adapter cannot accept), and placed into a query object (which the accused second adapter requires).

## IV. The District Court erred when it failed to credit Thought's evidence that structural elements of the accused systems meet the "*extracting the object attributes and the object name from the object*" limitation.

### A. The District Court erred when it construed "*extracting*" narrowly.

The asserted claims all recite that the object passed by the application "comprises" the "object attributes" and the "object name," and that the first adapter extracts them. Appx0111. In moving for summary judgment, Oracle contended "that 'extracting' attributes 'from the Object' requires the component to take only part of an object's attributes out for packing and communicating to the second

adapter/interface." Appx0085 at 20:7-14. Thought contended that the "extracting" limitation means that any first adapter that obtains *at least* the object's attributes and name, regardless of whether it extracts only some or all of the object. Appx0085 at 20:15-18. In other words, whatever else the first adapter may obtain from the object, the limitation is met if the first adapter extracts at least the object attributes and name.

In granting summary judgment, the District Court adopted Oracle's construction, that the first adapter must extract *only* the object name and attributes:

> I agree with Oracle; "extracting" as supported by the claim language refers to extracting a *subset* of information from an object. While Thought's expert explains that in the data processing realm "extracting" can mean wholesale copying of all of an object's information (for example, a query that asks for production of all employee information from a database containing only employee information), that unremarkable concept does not help Thought here. That sort of wholesale copying of all information from an object, or passing along the whole object, is simply not contemplated by either the claim language or shown in the preferred embodiments, which require and show "extracting" a subset of information in order for it to be packed for communication.

Appx0086 at 21:11-14. But nowhere in its opinion did the District Court cite any limiting language in the claims, the specification, the prosecution history, or any extrinsic evidence to support its narrow claim construction. In so ruling, the District Court erred.

None of the claims include language that limits "*extracting*" to *only* the object name and attributes, nor do they expressly limit "*extracting*" to only a "*subset*" of the information from an object. Independent claims 1, 3, 7 and 8 recite that the first adapter receives "an object comprising the object attributes and an object name from the object application." Appx0111 at 35:11-12, 34-35; 36:1-2, 39-40. It is well established that "comprising" is a "term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim." *Genentech, Inc. v. Chiron Corp.,* 112 F.3d 495, 501 (Fed. Cir. 1997). Thus, the object received by the first adapter contains *at least* the object's attributes and object name. All four independent claims recite that the first interface or adapter merely "extract[s] the object attributes and the object name from the object," without any limiting language. Thus, the claim language requires only that the first interface or first adapter obtains at least the object name and attributes from the object.

Nor does the specification support the District Court's narrow construction of "extracting." Rather, the specification parallels the claim language, stating the first adapter receives the request object from the application, and "also extracts the object attributes and the object name from the object" (Appx0095 at 3:12-13), and that upon receiving the request object, the first adapter "then extracts the object attributes 103 and the object name 104 from the object 102" (Appx0097 at 7:42-

44), with reference to Figure 1. Figure 1 is equally devoid of anything suggesting

limitation. It shows the object received by the first interface or adapter (102) with

an object name (103) and attributes (104). Appx0093. Nothing in Figure 1

indicates that *only* the object name and attributes is extracted by the first interface

or adapter.

Thought presented extrinsic evidence that is consistent with the intrinsic

record. Dr. Jagadish explained that a person of ordinary skill in the art would

understand "*extracting*" to mean "obtaining," in other words, that the object was

merely the source of the name and attributes. Appx0343 at ¶ 54. He explained

why a person of ordinary skill in the art would understand "*extracting*" to apply

equally to extracting only the object name and attributes, as well as extracting the

entire object including the object name and attributes:

> In data processing, there is no reason that "extracting"
> must leave something behind -- no reason that some
> lesser part must be pulled from the whole. When
> querying an employee database, a query for "Smith"
> extracts just the relevant employees and leaves non-
> Smiths behind; in this example, Dr. Hosking's "pull
> from" concept works and so does my "obtain." On the
> other hand, a query for all employees extracts all the
> employees. It returns the entire database, retrieving all
> the records. And yet the database remains. All the
> employee records were extracted. In fact even the query
> for "Smith" may extract all employees from a database of
> a company where every employee happened to be named
> "Smith". In other words, the very same query for
> employees named "Smith" may extract some or all

records from a database, depending on what the database contents happen to be.  In either event, it is performing extraction.

Appx0344 at ¶ 57.  He explained that in the field of data processing, Oracle's

narrow definition of "*extracting*" does not make sense:

> In the frequently-occurring example of retrieving all database records, Dr. Hosking's requirement to "pull from" would not make sense because nothing is left behind in such an extraction.  My definition, "obtain," is general enough to cover the situation in which all of the database records are extracted.  The definition of "extracting" as "obtaining" is more correct than the alternative of "pulling from" because "obtaining" is tailored to the field of data processing.

Appx0344-345 at ¶ 58.  And he further explained that Oracle's narrow definition

of "*extracting*" improperly excluded common forms of extracting in data

processing:

> In data processing, unlike in the physical world, when you extract you make a copy and you do not destroy the original.  Likewise, if extracting all the attributes from an object, it is permissible to perform such extraction in a manner that obtains the entire object (which contains all the attributes).  Dr. Hosking's interpretation of "pulling from" is, in my opinion, too narrow because it cuts out the very common situation in which an entirety is extracted. In my opinion, an artisan of ordinary skill would understand "extracting" to mean "obtain."

Appx0345 at ¶ 59.

The District Court's narrow construction of "*extracting*"—that the first

interface or adapter extracts only the object name and attributes as a "*subset*"—is

incorrect. This Court Should reverse the District Court's new narrow construction of "*extracting*," and hold that "*extracting*" means obtaining at least the object attributes and name from the object.

**B.  The District Court failed to credit Thought's evidence that the structural elements of the accused systems met the "*extracting the object attributes and object name from the object*" limitation under the proper construction.**

The District Court ruled that "Thought provides no explanation to show that that Court-accepted definition [of 'object' as 'an instance of a class'] encompasses *either* an object which necessarily (to read on the claims) contains a reference to another two objects or an object that is "a set of parameters." Appx0087 at 22:4-7. The District Court stated that Dr. Jagadish "does not explain why the use of an object containing two references to additional objects covers the claim language of 'extracting the object attributes and the object name from the object.'" *Id.* at n. 27. And it concluded that "Thought failed to raise a material issue of fact to rebut Oracle's evidence that TopLink does not 'extract' a subset of information—namely an object name and then object attributes—from a singular 'instance of a class.'" Appx0087.

As shown above, the predicate for the District Court's conclusion—that "*extracting*" means extracting only a *subset* of information from an object—is incorrect. Under the term as properly construed, Thought submitted more than

sufficient evidence to present a disputed issue of material fact.  Dr. Jagadish

specified the elements of the accused systems that perform "*extracting*" the object

name and attributes:



> The "object name" in the form of *Class<T> entityClass*
> is extracted from the object that is the set of parameters
> passed into the *find()* method and is used to determine the
> ████████████ for the *find()* invocation by calling
> the ████████ method.  The "object name" is
> represented by the ████████████
> ████████ method, as the class ████████
> includes the protected class ████ attribute at
> ████████████████████
> in the parallel EclipseLink, thereby " extracting … the
> object name from the object."

> The "object attributes" in the form of Object primaryKey
> are extracted from the object that is the set of parameters
> passed into the *find()* method, thereby "said first interface
> extracting the object attributes … from the object."



> Specifically, ████████████████████
> ████████████████████
> ████████████████ found at
> *EntityManagerImpl*████ ORCL_THT_SC_00002638
> calls to: ████████████████████
> ████████████████████
> ████████████████████
> ████████ ound at *EntityManagerImpl*████
> ORCL_THT_SC_00002639.

Appx0876-877.

The claims recite that the first adapter receives an object from the

application, and extracts the object name and attributes "from the object."

Appx.0111. Thought submitted evidence that in the accused systems, the request

CONFIDENTIAL MATERIAL HAS BEEN DELETED

"object" is an object that has references to two other objects, one with the object

name and the other with the object attributes:

> Under the specific "find" theory, also known in my initial infringement report as Trace 1, I indicate that the "object" from the object application is an object with references to two other objects, not the two objects themselves. As I noted in my opening infringement report, I am using the Court's construction that "an object is an instance of a class." I also stated in my initial infringement report that "Objects 'are derived from a template, and the collection of objects that are instances of a particular template are said to form a class.'"

Appx0346 at ¶ 62. The accused systems retrieve data from a database using the

*find()* method, and the template (or parameters) that go into the *find()* method to

tell it what data to find defines a class of objects that meet the template (or

parameters); and an instance of that class—the references to the two objects

containing the attributes and name—is itself an object:

> Oracle's implementation of JPA provides a uniform method for retrieving an object from a database that uses "*find()*". The ███████████████ is given by "*(Class<T> entityClass, Object primaryKey)*." All uses of *find()* employ ████████████ Id. One example usage according to ████████ could be, e.g., ████████████████████████ he vector of objects in ████████ defines a class, and the instance ████████████████ is a specific instance of that class, and is an object.

Appx0346 at ¶ 64.

CONFIDENTIAL MATERIAL HAS BEEN DELETED

Dr. Hosking misinterpreted Dr. Jagadish, and argued that Dr. Jagadish

treated the two *referenced* objects as the accused "object," but Dr. Jagadish

disagreed:

> 61.  In ¶ 54b of his declaration, Dr. Hosking states his opinion that my infringement theories involving "*find*" or "*readObject*" improperly treat two objects as one object, and also his opinion that "these two objects would never be considered to be one object because, for example, they are not even both instances of the same class."  I understand Dr. Hosking's statements, but I disagree with them.  My infringement theories do not treat two objects as one object.

> 62. Under the specific "find" theory, also known in my initial infringement report as Trace 1, I indicate that the "object" from the object application is an object with references to two other objects, not the two objects themselves.  As I noted in my opening infringement report, I am using the Court's construction that "an object is an instance of a class." I also stated in my initial infringement report that "Objects 'are derived from a template, and the collection of objects that are instances of a particular template are said to form a class.'"

> [….]

> 64. Oracle's implementation of JPA provides a uniform method for retrieving an object from a database that uses "*find()*". The ███████████████████ is given by ████████████████████████████████████┤ ll uses of *find()* employ ███████████ *Id.* One example usage according to ███████████ could be, e.g., ██████████████████████████┐ The vector of objects in the template defines a class, and the instance ██████████████████████████████is a specific instance of that class, and is an object.

-61-
CONFIDENTIAL MATERIAL HAS BEEN DELETED

Appx0345-346 at ¶¶ 61, 62, 64.

While Dr. Hosking's analysis rested on a misinterpretation of Dr. Jagadish's infringement theory, the conflicting extrinsic evidence of Drs. Jagadish and Hosking concerning whether the accused systems have elements that meet the "*extracting* the object name and object attributes" limitation at least presents a disputed issue of material fact that precludes summary judgment. *See* Appx0984. *Cross Med. Prods.*, 424 F.3d at 1313-14, 1316-17, 1318-19, 1322 (reversing summary judgment where parties presented conflicting expert opinions).

The District Court committed reversible error by failing to credit Dr. Jagadish's testimony in his summary judgment declaration. Appx0345-348 at ¶¶ 61-69. And the District Court failed to credit his incorporated infringement proofs, quoted and cited above. This evidence was sufficient for a jury to render a verdict in Thought's favor, thereby presenting disputed issues of material fact.

**V.    The District Court erred when it ruled that the Oracle products packaged and sold with TopLink or EclipseLink and that use them to persist data do not infringe the asserted claims of the '197 Patent.**

The District Court ruled that "[h]aving concluded that Thought failed to raise a material issue of fact precluding summary judgment of non-infringement as to TopLink, none of the other Oracle products packaged and sold with TopLink can be accused of infringement." A0087 at 22:15-17. But as demonstrated above, the District Court erred in ruling that Thought had not presented sufficient

evidence that the accused systems infringe the asserted claims of the '197 Patent.

Therefore, the "other Oracle products packaged and sold with TopLink [or

EclipseLink]," which use TopLink or EclipseLink as persistence providers,

necessarily are not subject to summary judgment.  Disputed issues of material fact

preclude summary judgment on these points.  Accordingly, the District Court's

grant of summary judgment of non-infringement to Oracle should be reversed as to

all accused systems.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, Thought respectfully requests that this Court:

(1)    reverse the District Court's narrow constructions of "*packing*" and

"*extracting*;"

(2)    hold that "*packing*" means "placing data into a form suitable for

communication between software components;"

(3)    hold that "*extracting*" means "obtaining at least the object attributes

and object name;"

(4)    hold that Thought presented sufficient evidence to create disputed

issues of material fact over whether the accused systems have a "*first adapter*"

with elements that meet the "*unpacking*" and "*instantiating*" limitations;

(5)    hold that Thought presented sufficient evidence to create disputed

issues of material fact over whether the accused systems have elements that meet

the "*packing*" and "*extracting*" limitations properly construed; and

(6)    remand this case to the District Court with directions to deny Oracle's

motion for summary judgment of non-infringement.

Dated:  October 4, 2016.              Respectfully submitted,

                                                   /s/ *Mark S. Carlson*
                                                          Mark S. Carlson
                                                          *Principal Attorney*

                                      STEVE W. BERMAN
                                      MARK S. CARLSON
                                      NICHOLAS S. BOEBEL
                                      HAGENS BERMAN SOBOL SHAPIRO LLP
                                      1918 Eighth Avenue, Suite 3300
                                      Seattle, WA  98101
                                      (206) 268-9346
                                      markc@hbsslaw.com

                                      KELLY G. HYNDMAN
                                      CHANDRAN B. IYER
                                      SUGHRUE MION PLLC
                                      2100 Pennsylvania Avenue, N.W.
                                      Washington, DC 20037
                                      (202) 663-7407
                                      khyndman@sughrue.com

                                      Attorneys for Plaintiff-Appellant

**UNITED STATES DISTRICT COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

Thought, Inc. v. Oracle Corporation
Case No. 16-2369

**<u>CERTIFICATE OF SERVICE</u>**

I certify that I served a copy on counsel of record on October 4, 2016, by

Electronic Means (by CM/ECF).

/s/ *Mark S. Carlson*
Mark S. Carlson
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
(206) 268-9346
(206) 623-0594
markc@hbsslaw.com

**UNITED STATES DISTRICT COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

Thought, Inc. v. Oracle Corporation
Case No. 16-2369

**CERTIFICATE OF COMPLIANCE
WITH TYPE-VOLUME LIMITATION, TYPEFACE
REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) or Fed. R. App. P. 28.1(e).

1.      This brief contains 13,579 words, excluding the parts of the brief

exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the or typeface requirements of Fed. R. App.

P. 32(a)(5) or Fed. R. App. P. 28.1(e) and the type style requirements of Fed. R.

App. P. 32(a)(6).  This brief has been prepared in a proportionally spaced typeface

using Microsoft Word 2010 using 14-point proportional spacing in Times New

Roman type style.

/s/ *Mark S. Carlson*
Mark S. Carlson
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
(206) 268-9346
(206) 623-0594
markc@hbsslaw.com